UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STACY LASHER,
  a/k/a Stacy D. Lasher,

                       Plaintiff,

          v.                                               9:16-CV-0198
                                                          (BKS/TWD)

DOMINIC DAGOSTINO, et al.,

                        Defendants.
_____

APPEARANCES:

STACY LASHER
23935
Plaintiff, pro se
Schenectady County Jail
320 Veeder Avenue
Schenectady, NY 12307

BRENDA K. SANNES
United States District Judge

# DECISION AND ORDER

## I.    INTRODUCTION

     The Clerk has sent to the Court for review a complaint brought pursuant to 42 U.S.C. § 1983 ("Section 1983") by pro se plaintiff Stacy Lasher, together with an application to proceed in forma pauperis. Dkt. No. 1 ("Compl."), Dkt. No. 6 ("IFP Application"). Plaintiff has also filed a motion for preliminary injunctive relief and a motion for appointment of counsel. Dkt. Nos. 5, 10. Plaintiff is incarcerated at the Schenectady County Correctional Facility and has not paid the filing fee for this action. The Court has received a motion from non-party Fernando Rivera ("Rivera"), an inmate incarcerated at Franklin Correctional Facility, requesting permission to join this action as an additional plaintiff. Dkt. No. 12.

## II. DISCUSSION

### A. Rivera's Request to Join This Action As An Additional Plaintiff

As an initial matter, the Court will address Rivera's request to join this action as an additional plaintiff. Dkt. No. 12. A civil action is commenced in federal district court "by filing a complaint." Fed. R. Civ. P. 3. The filing fee, which is currently $400.00, must also be paid at the time an action is commenced, unless each plaintiff submits a completed IFP Application. *See* 28 U.S.C. §§ 1914(a), 1915(a).[1] The federal statute governing applications to proceed in forma pauperis in federal court, the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915, provides in pertinent part that an IFP Application must be accompanied by "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2). In accordance with the Local Rules of Practice for the Northern District of New York ("N.D.N.Y.L.R."), a prisoner seeking in forma pauperis status in a civil action subject to the PLRA may satisfy this requirement by submitting a completed, signed, and certified IFP Application. N.D.N.Y.L.R. 5.4(b)(1)(A).[2]

When a civil action is commenced by a prisoner, additional restrictions are imposed by the PLRA. One such requirement is set forth in 28 U.S.C. § 1915(b)(1), which states that, "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be

---

[1] The total cost for filing a civil action in this court is $400.00 (consisting of the civil filing fee of $350.00, see 28 U.S.C. § 1914(a), and an administrative fee of $50.00).

[2] A "certified" IFP Application is one on which the Certificate portion has been completed and signed by an appropriate official at the plaintiff's facility. The Certificate portion provides information regarding funds and/or securities held on account to the inmate's credit over the preceding six months. Local Rule 5.4 also provides, in pertinent part, that, if the prisoner fails to fully comply with the above-described requirements after being informed by Court order of what is required, "the Court shall dismiss the action." N.D.N.Y.L.R. 5.4(b)(2)(A).

2

required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). In accordance with the statute, the filing fee is paid over time from funds available in the plaintiff's prison account. In furtherance of this requirement, the Northern District of New York requires all inmates to submit, in addition to a fully completed, certified IFP Application, the authorization form issued by the Clerk's Office. *See* N.D.N.Y.L.R. 5.4(b). The inmate authorization form authorizes periodic withdrawals in respect of the filing fee and acknowledges the inmate plaintiff's obligation to pay the entire $350.00 filing fee "regardless of the outcome of my lawsuit."[3]

United States District Judge Lawrence E. Kahn of this District has previously concluded that the fact that there are multiple plaintiffs in an action does not reduce or otherwise negate the obligation imposed on each incarcerated plaintiff to pay the filing fee under 28 U.S.C. § 1915(b)(1). *See Ashford v. Spitzer*, No. 9:08-CV-1036 (DNH/RFT), Dkt. No. 127 (Decision and Order filed Mar. 16, 2010) (holding that, in an action filed by multiple prisoners proceeding in forma pauperis, each of the six plaintiffs "must individually comply with the [terms of] Section 1915(b)(1) which requires a prisoner to pay the full amount of the filing fee for any civil action commenced.");[4] *see also Razzoli v. Exec. Office of U.S. Marshals*, No. 10-CV-4269, 2010 WL 5051083, at *3 (E.D.N.Y. Dec. 2, 2010) (holding that where there are multiple prisoner plaintiffs, each must comply with the requirements for

---

[3] A party granted in forma pauperis status is not required to pay the $50.00 administrative fee; however, a prisoner granted in forma pauperis status is required to pay, over time, the full amount of the $350.00 filing fee, regardless of the outcome of the action. See 28 U.S.C. § 1915(b)(3).

[4] The proper application of the requirement set forth in 28 U.S.C. § 1915(b)(1) that each prisoner plaintiff who seeks in forma pauperis status be required to pay "the full amount of the filing fee" to an action brought by multiple plaintiffs was discussed at length in *Ashford*. *See Ashford*, Dkt. No. 127 at 3-9. "Absent specific instruction from the Second Circuit, and after reviewing the decisions of the various Circuits that have addressed the issue, [Judge Kahn] found that those cases concluding that prisoners may file joint actions but must each pay the full filing fee appear to be better reasoned." *Id*. at 9.

seeking in forma pauperis status); *Amaker v. Goord*, No. 09-CV-0396, 2009 WL 1586560, at *2 (W.D.N.Y. June 4, 2009) (holding that each plaintiff prisoner must file an in forma pauperis application and inmate authorization form) (citing cases).

In addition to the filing fee requirements set forth in the PLRA and the Local Rules, Rule 11(a) of the Federal Rules of Civil Procedure states in relevant part:

> **(a) Signature.** Every pleading, written motion, and other paper must be signed . . . by a party personally if the party is unrepresented . . . . The court must strike an unsigned paper unless the omission is promptly corrected after being called to the . . . party's attention.

Fed. R. Civ. P. 11(a).

Rivera has failed to comply with any of the requirements to commence an action in Federal Court. He has not paid the filing fee of $400.00 in full, or in lieu thereof submitted an IFP Application accompanied by an inmate authorization form signed by him wherein he agrees to pay the $350.00 filing fee required of prisoners in full, in installments taken from his inmate account. Nor has Rivera signed the complaint.[5] Rivera's request to join this action as an additional plaintiff is denied without prejudice.[6] Accordingly, the complaint (Dkt. No. 1) will

---

[5] Rule 20 of the Federal Rule of Civil Procedure governs motions for permissive joinder. Fed. R. Civ. P. 20 ("Rule 20"). "Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a). Rivera provides insufficient facts to suggest that joinder would be proper under Rule 20. Moreover, the fact that Rivera is now located at a different correctional facility than plaintiff makes joining their claims impractical at best. *See, e.g., Roulhac v. Kenyan*, No. 8:15-CV-0016 (MAD/DJS), 2015 WL 5943624, at *6 (N.D.N.Y. Oct. 13, 2015) (Report-Recommendation) (noting that there are "inherent difficulties presented by multiple-inmate cases, including the impracticality in meeting the requirement that each Plaintiff sign every pleading where, as is the case here, each Plaintiff resides at a different facility and may have limitations on their abilities to communicate with one another."), *adopted id*. at *3.

[6] Rivera also asks the Court to "make" this case a class action. Dkt. No. 12 at 1. Rivera is not considered a party to this action, and therefore he may not move for class certification. Moreover, it is well settled that a class action cannot be maintained by a pro se litigant since non-attorneys may not represent anyone other than themselves. *Miller v. Zerillo*, No. 07-CV-1719, 2007 WL 4898361, at *1 (E.D.N.Y. Nov. 2, 2007) (citing cases and recommending denial of class certification without prejudice until an attorney makes an

4

be considered brought only by plaintiff Stacy Lasher.

### B. Plaintiff's IFP Application

Upon review, the Court finds that plaintiff has submitted a completed and signed IFP Application (Dkt. No. 6) which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization form required in this District. Dkt. No. 3. Accordingly, plaintiff's IFP Application is granted.[7]

### C. Initial Screening of Plaintiff's Complaint

Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[8] Thus, even if a plaintiff meets the financial criteria to commence an action in forma pauperis, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action in forma pauperis. *See id*.

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil

---

appearance); *see also Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998); 28 U.S.C. § 1654. Since neither plaintiff nor Rivera claim to be attorneys, any request to have this matter class certified would be denied without prejudice to renew in the event an attorney appears on plaintiff's behalf.

[7] "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id*. (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

[8] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

5

action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

In reviewing a pro se complaint, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do

6

not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal quotation marks and alterations omitted).

### D. Summary of Plaintiff's Complaint

In his complaint, plaintiff asserts claims arising out of his confinement at Schenectady County Correctional Facility *See generally* Compl. Plaintiff names two defendants: Dominic Dagostino, the Sheriff of Schenectady County Correctional Facility; and Robert Cuttita, the Superintendent of the Schenectady County Correctional Facility *Id*. at 1. Plaintiff claims that the "Schenectady County Correctional Facility Staff being" defendants Dagostino and Cuttita denied him access to the courts by denying him access to adequate legal materials. *Id*. at 3-4. In support of his claims, plaintiff attaches a copy of a grievance that he filed claiming that he did not receive some legal materials that he requested; the legal materials that he did receive were not timely received; and the Schenectady County Correctional Facility has violated state regulations governing law libraries and the provision of legal materials to inmates. Dkt. No. 1-1 at 2-5. Plaintiff also claims that defendant Cuttita did not respond to his grievances. Compl. at 2. Construed liberally, plaintiff alleges that he was denied access to the courts in violation of his rights under the First and Fourteenth Amendments to the United States Constitution and his grievances were not adequately addressed. Plaintiff seeks monetary damages and injunctive relief. *Id*. at 6. For a more complete statement of

7

plaintiff's claims, refer to the complaint.

### E. Analysis of Plaintiff's Complaint

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted). "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

#### 1. Denial of Access to the Courts Claims

It is well settled that inmates have a First Amendment right to "petition the Government for a redress of grievances."[9] This right, which is more informally referred to as a "right of access to the courts," requires States "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights." *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *modified on other grounds, Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Bourdon v. Loughren*, 386 F.2d 88, 92 (2d Cir. 2004). "However, this right is not 'an abstract, freestanding right . . . .' and cannot ground a Section 1983 claim without a showing of 'actual injury.'" *Collins v. Goord*, 438 F. Supp. 2d 399, 415 (S.D.N.Y. 2006) (quoting *Lewis*, 518 U.S. at 351).

Furthermore, a person's right of access to the courts has been found to arise not only

---

[9] *See* U.S. Const. amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.").

8

under the First Amendment but under other parts of the Constitution, including the Due Process Clause of the Fourteenth Amendment. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) (explaining that the Court has grounded decisions regarding the right to access the courts in the Privileges and Immunities Clause, the Petition Clause, the Fifth and Fourteenth Amendment Due Process Clauses, and the Equal Protection Clause); *Monsky v. Moraghan*, 127 F.3d 243, 246 (2d Cir. 1997) ("[T]he source of this right [of access to the courts] has been variously located in the First Amendment right to petition for redress [of grievances], the Privileges and Immunities Clause of Article IV, section 2, and the Due Process Clauses of the Fifth and Fourteenth Amendments.") (citations omitted).

To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating both (1) that the defendant acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury. *Lewis*, 518 U.S. at 353. "A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts." *Amaker v. Haponik,* No. 98 Civ. 2663, 1999 WL 76798, at *3 (S.D.N.Y. Feb.17, 1999). Instead, a plaintiff must demonstrate "actual injury" by establishing that the denial "hindered his efforts" to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 349, 351-53. "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (citing *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995)).

The Supreme Court has stated that in order to allege a denial of access to the courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint . . . ." *Christopher*, 536 U.S. at 415. The Supreme Court

9

instructed that the underlying claim "must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id*. at 415-16. "[T]he complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Id*. at 417-18 (footnote omitted).

Here, plaintiff alleges only that he was not provided with some of the legal materials that he requested, and as to the materials he did receive, he did not receive them in a timely fashion as required by state regulations. Dkt. No. 1-1 at 2-5. Taking plaintiff's claim as true, he nevertheless "offers no facts to explain how [the denial of legal materials, or their delayed production] prejudiced his ability to seek redress from the judicial system." *Smith v. O'Connor,* 901 F. Supp. 644, 649 (S.D.N.Y. 1995). Plaintiff fails to provide any information in the complaint about the basis of any court action or proceeding which was actually frustrated as a result of his inability to receive, or to timely receive, legal materials. *See Christopher*, 536 U.S. at 416 ("Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant.") (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-515 (2002)). Simply stated, plaintiff fails to allege any facts to plausibly suggest that a non-frivolous claim was actually hindered or prejudiced because of the alleged denial of access to legal materials. *See Lewis*, 518 U.S. at 360 n.7 ("Courts have no power to presume and remediate harm that has not been established."); *Arce v. Walker*, 58 F. Supp. 2d 39 (W.D.N.Y. 1999) ("a prisoner's conclusory assertion that he suffered prejudice does not

10

suffice to support an access to courts claim . . . some showing of impaired access is required"); *see also Davis*, 320 F.3d at 352 ("Mere 'delay in being able to . . . communicate with the courts does not rise to the level of a constitutional violation.'").

Moreover, it is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *see also Iqbal*, 556 U.S. at 676. "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). "[V]icarious liability is inapplicable to . . . § 1983 suits." *Iqbal*, 556 U.S. at 676. Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).[10]

---

[10] The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*"); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]") (citing *Grullon*, 720 F.3d at 139). In any event, as discussed *infra*, in this case plaintiff has failed to adequately allege personal liability against either defendant even under the *Colon* standards.

The statement of facts for the complaint is devoid of factual allegations to plausibly suggest that defendants Dagostino or Cuttita were involved in the alleged denial of access to legal materials as recounted in the complaint. *See generally* Compl. Thus, it appears that plaintiff named the Dagostino and Cuttita as defendants solely by virtue of their respective positions as the Sheriff and Superintendent of Schenectady County Correctional Facility.

Apart from the conclusory allegation that staff at Schenectady County Correctional Facility denied plaintiff legal materials or delayed giving them to plaintiff, there are no allegations of wrongdoing by defendant Dagostino. Thus, it appears that he is named as a defendant merely because of his position as Sheriff. Dismissal of a Section 1983 claim is proper where plaintiff does no more than allege defendant was in charge of the prison. "[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) ("The bare fact that [the defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [plaintiff's] claim").

In the section of the complaint where he is asked to identify what steps he took to exhaust his administrative remedies, plaintiff does allege that defendant Cuttita failed to respond to plaintiff's grievances or letters of complaint. Compl. at 2; *see also* Dkt. No. 1-1 at 25-26 (same). Construing this portion of plaintiff's complaint liberally, plaintiff appears to allege that defendant Cuttita was liable as a supervisor because he failed to correct the wrongdoing alleged in the complaint when it was called to his attention through a grievance. However, the failure to correct claim fails because plaintiff has failed to state a denial of

access to the courts claim against any staff at Schenectady County Correctional Facility  See *Toole v. Connell*, No. 9:04-CV-0724 (DEP/LEK), 2008 WL 4186334, at *1, 7 (N.D.N.Y. Sep. 10, 2008) (supervisory defendant cannot be liable for failing to investigate or correct conduct that has already been found to be not actionable under section 1983); *see also Linares v.. Mahunik*, No. 9:05-CV-0625 (RFT/GLS), 2006 WL 2595200, at *11 (N.D.N.Y. Sept. 11, 2006) (holding plaintiff could not "sustain a supervisory liability claim as there was no wrong for [supervisor-defendant] to remedy since there [was] no constitutional violation").

Accordingly, plaintiff's denial of access to the courts claims, whether asserted under the First or Fourteenth Amendments, do not survive sua sponte review and are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Failure to Adequately Address Grievances

It is well-established that a prison inmate has no constitutional right of access to an internal grievance process. *Rhodes v. Hoy*, No. 9:05-CV-0836 (FJS/DEP), 2007 WL 1343649, at *6 (N.D.N.Y. May 5, 2007) (noting that inmates have "no constitutional right of access to the established inmate grievance program"); *Davis v. Buffardi*, No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) ("[P]articipation in an inmate grievance process is not a constitutionally protected right."); *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) (holding that "inmate grievance procedures are not required by the Constitution" and therefore failure to see to it that grievances are properly processed does not create a claim under Section 1983).  Simply stated, there is no underlying constitutional obligation to afford an inmate meaningful access

13

to the internal grievance procedure, or to investigate and properly determine any such grievance.

To the extent that plaintiff may claim that the alleged failure of defendant Cuttita to address plaintiff's grievances denied him access to the courts, the claim fails "since under the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1996), a plaintiff whose access to the grievance process has been hindered or foiled by actions of prison officials are excused from the PLRA's exhaustion requirement and permitted to file suit without having completed that process." *White v. Clark*, No. 9:12-CV-0986 (NAM/RFT), 2012 WL 5877160, at * 8 (N.D.N.Y., Nov. 20, 2012) (citing *Hemphill v. New York*, 380 F.3d 680, 686-91 (2d Cir. 2004)); *see also, e.g., Cancel*, 2001 WL 303713, at *3 (internal citations omitted) ("While there is a First Amendment right of meaningful access to the courts and a right to petition the government for redress, inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983. When an inmate sets forth a constitutional claim in a grievance to prison officials and the grievance is ignored, the inmate has the right to directly petition the government for redress of that claim. Therefore, the refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a claim under § 1983").

In light of the foregoing, plaintiff's claims that defendant Cuttita failed to adequately address his grievances, or that defendant Cuttita's failure to respond to any grievance denied plaintiff access to the courts, do not survive sua sponte review and are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. Violation of State Regulations

A Section 1983 claim brought in federal court is not the appropriate forum to urge violations of prison regulations or state law; rather, in order to prevail on a Section 1983 claim, the allegations asserted must constitute violations of constitutional due process standards. *Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665, at *6 (S.D.N.Y. Mar. 15, 2001) ("Section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles") (citing *Doe v. Connecticut Dept. of Child & Youth Servs*., 911 F. 2d 868, 869 (2d Cir. 1990) (other citations omitted); *see also Fluent v. Salamanca Indian Lease Auth.*, 847 F. Supp. 1046, 1056 (W.D.N.Y. 1994) (Section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles).

Thus, plaintiff's claim that the law library at Schenectady County Correctional Facility is not in compliance with state regulations does not survive sua sponte review, and is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted under Section 1983.

### F.     Dismissal With Opportunity to Amend

Upon review, and with due regard for plaintiff's status as a pro se litigant, plaintiff's complaint is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. In light of his pro se status, plaintiff is afforded the opportunity to file an amended complaint. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). In any amended complaint that

plaintiff submits in response to this Decision and Order, he must set forth a short and plain statement of the facts on which he relies to support his claims that the individuals named as defendants engaged in misconduct or wrongdoing that violated his constitutional rights. Plaintiff is advised that any amended complaint will completely replace the prior complaint in the action, and that no portion of any prior complaint shall be incorporated into his amended complaint by reference. Plaintiff is advised that if he fails to submit an amended complaint within thirty (30) days of the filing date of this Decision and Order, the Court will, without further order, dismiss this action without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### G. Plaintiff's Motion for Preliminary Injunctive Relief

"In general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.'" *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)). However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) (internal quotation marks omitted)). A mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief

16

requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Cacchillo*, 638 F.3d at 406 (citing *Citigroup Global Mkts.*, 598 F.3d at 35 n.4) (internal quotation marks omitted)); *see also Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (a plaintiff seeking a mandatory injunction must make a "clear" or "substantial" showing of a likelihood of success on the merits of his claim). The same standards used to review a request for a preliminary injunction govern consideration of an application for a temporary restraining order. *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992); *Perri v. Bloomberg*, No. 06-CV-0403, 2008 WL 2944642, at * 2 (E.D.N.Y. Jul. 31, 2008). The district court has wide discretion in determining whether to grant preliminary injunctive relief. *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005).

Plaintiff was incarcerated at the Saratoga County Correctional Facility when he filed his motion for preliminary injunctive relief, but was scheduled to be returned to the custody of the Schenectady County Correctional Facility. Dkt. No. 5 at 1-2. Plaintiff alleges that he fears for his safety at the Schenectady County Correctional Facility, and requests the Court's assistance in having him housed elsewhere.[11] *Id*. The Court has found plaintiff's complaint to be insufficient and that an amended complaint must be filed for this action to proceed. Without a valid complaint, plaintiff can not possibly establish that his claim has a likelihood of success on the merits of the claim or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief, let alone the more stringent standard required for issuance of a mandatory injunction. Therefore, the

---

[11] Plaintiff has already been returned to the custody of the Schenectady County Correctional Facility. Dkt. No. 9.

motion for preliminary injunctive relief (Dkt. No. 5) is denied.[12]

### H. Plaintiff's Motion for Appointment of Counsel

The Second Circuit has articulated several factors for determining whether to appoint counsel to an indigent civil litigant pursuant to 28 U.S.C. § 1915(e). Those factors include: the litigant's likelihood of success on the merits; the complexity of the legal issues raised by the complaint; and the litigant's ability to investigate and present the case. *See Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986); *see also Wenger v. Canastota Cent. Sch. Dist.*, 146 F.3d 123, 125 (2d Cir. 1998). Of these criteria, the most important is the merits; i.e., "'whether the indigent's position was likely to be of substance.'" *McDowell v. State of N.Y.*, No. 91 Civ. 2440, 1991 WL 177271, at *1 (S.D.N.Y. Sept. 3, 1991) (quoting *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989)).

In the present case, plaintiff's complaint has not survived sua sponte review under 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A(b), therefore he must file an amended complaint for this action to proceed. Since plaintiff has failed to establish that his claim is likely to be of substance, his motion for appointment of counsel (Dkt. No. 10) is denied. If and when the Court has accepted an amended complaint for filing, defendants have responded to the allegations in the amended complaint, and the parties have undertaken discovery, plaintiff may choose to file a new motion for appointment of counsel, at which time the Court may be

---

[12] In any event, the law is clear that an inmate does not have a right to be confined to the prison of his own choosing or to a particular type of housing. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (inmates have no right to be confined in a particular state or particular prison within a given state); *see also Meachum v. Fano*, 427 U.S. 215, 229 (1976) ("The federal courts do not sit to supervise state prisons, the administration of which is acute interest to the states"). Thus, there is no legal basis for this Court to order that plaintiff be housed at a particular facility.

better able to determine whether such appointment is warranted in this case.[13]

## III. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's IFP Application (Dkt. No. 6) is **GRANTED**;[14] and it is further

**ORDERED** that the Clerk provide the Superintendent of the facility designated by plaintiff as his current location with a copy of plaintiff's authorization form (Dkt. No. 3), and notify the official that this action has been filed and that plaintiff is required to pay to the Northern District of New York the statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk shall provide a copy of plaintiff's authorization form (Dkt. No. 3) to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that Rivera's motion (Dkt. No. 12) to join this action is **DENIED**; and it is further

**ORDERED** that if plaintiff wishes to proceed with this action he must file a signed amended complaint **within thirty (30) days** of the filing date of this Decision and Order as set forth above; and it is further

**ORDERED** that if plaintiff timely files an amended complaint as directed above, the Clerk shall return the file to the Court for further review; and it is further

**ORDERED** that if plaintiff fails to timely file an amended complaint as directed above,

---

[13] Plaintiff is advised that any future motion for appointment of counsel must be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

[14] Plaintiff should note that although his IFP Application has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

19

the Clerk shall enter judgment indicating that this action is **DISMISSED without prejudice** without further order of this Court pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted and for failure to comply with this Decision and Order. In that event, the Clerk is directed to close this case; and it is further

**ORDERED** that plaintiff's motion for preliminary injunctive relief (Dkt. No. 5) is **DENIED**; and it is further

**ORDERED** that plaintiff's motion for appointment of counsel (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court shall provide plaintiff and Fernando Rivera with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff and on Fernando Rivera.

**IT IS SO ORDERED.**

Dated: April 28, 2016
        Syracuse, NY

*Brenda K. Sannes*
Brenda K. Sannes
U.S. District Judge